1  James E. Gibbons (State Bar No. 130631)
    *jeg@manningllp.com*
2  Chelsea Clayton (State Bar No. 318301)
    *cxc@manningllp.com*
3  **MANNING & KASS**
    **ELLROD, RAMIREZ, TRESTER LLP**
4  801 S. Figueroa St, 15th Floor
    Los Angeles, California 90017-3012
5  Telephone: (213) 624-6900
    Facsimile: (213) 624-6999
6
    Attorneys for Plaintiff NNYDENS
7  INTERNATIONAL INCORPORATED

8              **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11  NNYDENS INTERNATIONAL          Case No. 2:18-CV-09455
    INCORPORATED, a corporation,    Hon. Dolly M. Gee
12
              Plaintiff,            **PLAINTIFF NNYDENS**
13                                  **INTERNATIONAL'S**
         v.                         **MEMORANDUM IN OPPOSITION**
14                                  **TO DEFENDANT'S MOTION FOR**
    TEXTRON AVIATION, INC., a       **SUMMARY JUDGMENT**
15  corporation; and DOES 1 through 10,
    inclusive,                      *[Filed Concurrently with:*
16                                  *(1)Declarations of Helen Fung and*
              Defendant.           *Chelsea M. Clayton, Esq.;(2) Plaintiff's*
17                                  *Statement of Genuine Disputes; (3)*
                                    *Plaintiff's Evidentiary Objections to*
18                                  *Defendant's Separate Statement; and*
                                    *(4) [Proposed] Order RE Plaintiff's*
19                                  *Evidentiary Objections to Defendant's*
                                    *Separate Statement]*
20
                                    Judge:  Hon. Dolly M. Gee
21                                  Date:   May 22, 2020
                                    Time:   3:00 p.m.
22                                  Crtrm.: 8C

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................1

II.   STATEMENT OF FACTS ......................................................2

III.  LEGAL STANDARD ............................................................5

IV.   ARGUMENT .........................................................................6
  A.    DEFENDANT INTENTIONALLY INTERFERED WITH NNYDENS'
  CONTRACT WITH CFIC. .......................................................6
    1.    Nnydens had a valid and existing contract with CFIC. ...........7
    a.    The Statute of Frauds defense is not available to Defendant in an action
    alleging intentional interference with a contract. ...............8
    2.    Although Defendant had knowledge of Nnydens' contract with CFIC, it
    intentionally interfered with the contract by selling the subject valve to CFIC
    directly. .............................................................................12
  B.    THE COURTS OF APPEAL ARE SPLIT ON WHETHER A  CAUSE
  OF ACTION EXISTS FOR NEGLIGENT INTERFERENCE  WITH A
  CONTRACT..........................................................................13
  C.    NOT ONLY HAS DEFENDANT VIOLATED CALIFORNIA'S
  UNFAIR COMPETITION LAW BY INTENTIONALLY  INTERFERING
  WITH NNYDENS' CONTRACT WITH CFIC, IT  ADMITS THAT IT
  ENGAGES IN UNFAIR BUSINESS PRACTICES.........................16

V.    CONCLUSION......................................................................19

i

**PLAINTIFF NNYDENS INTERNATIONAL'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*Alexander v. Codemasters Group Ltd.*
 (2002) 104 CA4th 129......................................................................8

*Ambat v. City & County of San Francisco*
 (9th Cir. 2014) 757 F.3d 1017.........................................................5

*Anderson v. Liberty Lobby, Inc.*
 (1986) 477 U.S. 242....................................................................5, 6

*Antelope Valley Groundwater Cases*
 (2018) 30 CA5th 602......................................................................8

*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*
 (1997) 52 Cal. App. 4th 867...........................................................15

*Buckaloo v. Johnson*
 (1975)14 Cal. 3d 815.......................................................................8

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*
 (Cal. 1999) 20 Cal. 4th 163............................................................16

*Chameleon Eng'g Corp. v. Air Dynamics Inc.*
 (1980) 101 Cal. App. 3d 418...........................................................13

*Clayworth v. Pfizer, Inc.*
 (2010) 49 Cal. 4th 758...................................................................16

*Compare Woods v. Fox Broad. Sub., Inc.*
 (2005) 129 Cal. App. 4th 344.........................................................14

*CRST Van Expedited, Inc. v. Werner Enters.*
 (9th Cir. 2007) 479 F.3d 1099.........................................................16

*Fifield Manor v. Finston*
 54 Cal. 2d 632 (1960)...............................................................13, 14

*Freed v. Manchester Serv., Inc.*
 (1958) 165 Cal.App.2d 186...............................................................6

*Friedman v. Jackson*
 (1968) 266 Cal.App.2d 517........................................................10, 11

*Golden v. Anderson*
 (1967) 256 Cal. App. 2d 714............................................................9

*Guard-Life Corp. v. S. Parker Hardware Mfg.*
 (1980) 428 N.Y.S.2d 628...............................................................10

**PLAINTIFF NNYDENS INTERNATIONAL'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

*I-CA Enterprises, Inc. v. Palram Americas*, Inc.
    235 Cal. App. 4th 257 (2015)...................................................................12

*J'Aire Corp. v. Gregory*
    (1979) 24 Cal. 3d 799...........................................................................14

*Kasky v. Nike, Inc.*
    (2002) 27 Cal.4th 939..........................................................................16

*Korea Supply Co. v. Lockheed Martin Corp.*
    (2003) 29 Cal.4th 1134........................................................................10

*Kwikset Corp. v. Superior Court*
    (2011) 51 Cal. 4th 310.........................................................................16

*Little v. Amber Hotel Co.*
    (2011) 202 Cal.App.4th 280................................................................12

*Pmc, Inc. v. Saban Entm't*
    (1996) 45 Cal.App.4th 579..............................................................9, 10

*Reeves v. Hanlon*
    (2004) 33 Cal. 4th 1140....................................................................8, 12

*Savage v. Pacific Gas & Elec. Co.*
    (1993) 21 Cal. App. 4th 434............................................................12, 13

*SCEcorp v. Superior Court*
    (1992) 3 Cal. App. 4th 673...............................................................8, 14

*See v. Durang*
    (9th Cir. 1983) 711 F.2d 141.................................................................6

*Shamblin v. Berge*
    (1985) 166 Cal. App. 3d 118..................................................................9

*Unilab Corp. v. Angeles-IPA*
    (2016) 244 CA4th 622............................................................................8

*Zimmerman v. Bank of Am.*
    (1961) 191 Cal. App. 2d 55..............................................................9, 10

**STATUTES**

Business & Profession Code
    Section 17203.......................................................................................16

Business & Profession Code
    Section 17204.......................................................................................16

California Business Professions Code
    Section 17200.......................................................................................16

**PLAINTIFF NNYDENS INTERNATIONAL'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

California Commercial Code
     Section 2201 .......................................................................................................8

Civil Code
     Section 1624 .......................................................................................................9

Federal Rule Civil Procedure
     Section 56(a).......................................................................................................5

Federal Rule Civil Prodcedure
     Section 56(c).......................................................................................................5

**PLAINTIFF NNYDENS INTERNATIONAL'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff Nnydens International, Inc. ("Nnydens") brings this action against Defendant Textron Aviation, Inc. ("Defendant"), alleging that Defendant intentionally interfered with Nnydens' contract with a third-party located in China, the Flight Inspection Center of CAAC ("CFIC"). Nnydens also alleges that Defendant's conduct related to the interference, and its general business practices with brokers or "middle-men" violate California's Unfair Competition Law. After failing to conduct discovery until the eve of the deadline to file the present Motion for Summary Judgment, or Partial Summary Judgment (the "Motion"), Defendant attempts to confuse this Court with information that is not relevant to the present action, nor the negating of Nnydens' claims against it.

Defendant's instant motion for summary judgment argues that Nnydens' cause of action for intentional interference with its contract with CFIC fails because it is an unenforceable oral agreement that does not satisfy the statute of frauds. But the statute of frauds defense is inapplicable here, as it cannot be asserted by one who is not a party to the contract. Defendant also argues that it lacked knowledge of the agreement, but, as explained further below, the evidence shows that this is not so. Defendant even attempts to escape liability on a technicality by alleging that it did not actually conduct business directly with CFIC thereby interfering with Nnydens' contract, but instead, it conducted business with CFIC's aviation parts supply department.

Defendant's argument that Nnydens' cause of action for negligent interference with a contract fails because it is not recognized under California law is similarly flawed because the California Courts of Appeal are split on this issue. Lastly, Defendant's argument that Nnydens' cause of action for Unfair Competition also fails because Nnydens is a commercial enterprise is unintelligible, as the UCL protects both consumers and business competitors and Nnydens indeed has

**PLAINTIFF NNYDENS INTERNATIONAL'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
_Attorneys at Law_

1  standing to bring the claim. Moreover, Nnydens would prevail on its claim, not

2  only because Defendant intentionally interfered with Nnydens' contract with CFIC,

3  but also because Defendant's business practices are generally violate the UCL.

4          For all of the reasons set forth below, Defendant's Motion should be denied.

5                         **II.    STATEMENT OF FACTS**

6          Plaintiff Nnydens International, Inc.("Nnydens") is in the business of

7  procuring aviation parts for Chinese entities seeking American manufactured

8  aviation parts. [Declaration of Helen Fung ("Fung Decl."),¶2.]  Nnydens, seeking

9  new clients in China, entered an agreement with Chengdu Huatai Aviation

10  Company ("Chengdu") to be a supplier of certain aviation parts to Chengdu and its

11  contacts that also seek American manufactured aviation parts. [Fung Decl., ¶3.]

12  Chengdu connected Nnydens with one of its contacts, the Flight Inspection Center

13  of CAAC ("CFIC"). [Id.] CFIC, through one of its representatives named Xu

14  Chang, desperately sought the subject aviation part at issue here: the 103678-4

15  outflow valve "subject valve." [Fung Decl., ¶4.] Xu Chang had attempted to

16  purchase the subject valve from Defendant for several months, but was

17  unsuccessful. [Fung Decl., ¶4; Declaration of Chelsea Clayton, Esq. ("Clayton

18  Decl."), Exh. D.] Nnydens entered into a separate agreement with CFIC to procure

19  the subject valve for CFIC and sell it to CFIC. [Fung Decl., ¶5.] Nnydens was told

20  by CFIC that no other entity was working on procuring the subject valve. [Id.]

21  Nnydens would receive a substantial profit from the sale due to Nnydens' practice

22  of marking up the price of parts at least 50%. [Fung Decl., ¶2.] Upon the sale of the

23  subject valve by Nnydens to CFIC, Nnydens would share a percentage of the

24  profits with Chengdu and Chengdu would continue to use Nnydens as a supplier

25  and recommend it to business contacts and clients. [Fung Decl., ¶7.]

26          Helen Fung ("Fung"), the CEO of Nnydens, contacted Defendant on multiple

27  occasions by phone and email starting in February 2018 regarding several aviation

28  parts for its clients, including the subject valve for CFIC. [Fung Decl., ¶8.]

**PLAINTIFF NNYDENS INTERNATIONAL'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

Defendant advised Ms. Fung that Defendant needed her end-user's information solely to comply with federal regulations and assured her that Defendant would not contact the end-user and sell to the end-user directly. [Fung Decl., ¶9.] Ms. Fung was hesitant to identify her end-user because she feared that Defendant might use the information to contact her end-user directly. Nonetheless, on April 24, 2018, Ms. Fung identified CFIC as her end user. [Fung Decl., ¶10, Exh. A.]

Shortly thereafter, on May 2, 2018, Kevin McAllister, a Part Sales Manager for Defendant, emailed Feng Yue, a representative at CFIC, to inquire whether CFIC had asked Ms. Fung for a quote on part 103678-4. Yue confirmed that Ms. Fung was in fact working on acquiring that part for CFIC. [Clayton Decl., Exh. D.] Despite receiving verification that Ms. Fung was indeed contracted to acquire the part for CFIC, McAllister asked Bon Purganon, Textron's Customer Support Manger for Asia/Pacific, to assist with locating the valve *for CFIC*. [Clayton Decl., Exh. D.] On May 3, 2018, Textron created an invoice for CFIC. [Clayton Decl., Exh. E.] Bon Purganon emailed Feng Yue on May 8, 2018 and told her that he would let her know the cost and lead time as soon as he gets that information and advises that that he is working with Honeywell on a quote. [Clayton Decl., Exh. J.]

In a June 4, 2018 email from Defendant's employee George Helterbrand to Defendant's other employees, Helterbrand listed pricing for three potential customers for the valve. He specifically stated that "Due to the 103678-4 outflow valve being a made to order part that cannot be returned it would be very risky to a PIA account and the final price to the end customer would be greater than our full list if Nnydens Intl Inc. has any mark up on the sale of the part." [Clayton Decl., Exh. F.]

In late May or early June, Nnydens learned that Defendant had contacted CFIC directly. [Fung Decl., ¶11.] Ms. Fung promptly emailed Defendant's customer support representative, Cybill Zimmer to complain that Defendant had contacted her end user directly despite its promise not to. Ms. Fung requested that

**PLAINTIFF NNYDENS INTERNATIONAL'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant cease communications with Nnydens' client and any attempt to sell to it immediately. [Fung Decl., ¶11-12, Exh. B.] Zimmer forwarded Ms. Fung's email to Helterbrand and two other employees on June 4, 2018 asking: "We are still trying to process this via Helen's account and not sell directly to customer, correct?"[Clayton Decl., Exh. I.] However, Zimmer responded to Ms. Fung a week later on June 11, 2018, ignoring the accusation and proceeding as though she would still sell Ms. Fung the part, provided she received a payment wire**.** [Fung Decl., Exh. B]

Zimmer listed several non-negotiable conditions that she stated would apply in "this unique situation." The conditions included: payment by wire of estimated price of USD $107,934.00 to be received **prior to order placement**, price fluctuation, unavailability of a final invoice, 57 week minimum lead time, no cancellation, and that *"eventual delivery of this part and/or the timeline to delivery are not guaranteed. Any and all funds paid for the procurement of this part are non-refundable regardless of timeline, eventual delivery, and/or any other unforeseen circumstances."* [Id.]

Ms. Fung requested an invoice on June 11, 2018, so that she could process payment, but she was denied the request. Ms. Fung asked for an invoice again on June 19, 2018, and Ms. Zimmer replied with the same non-negotiable conditions. [Id.] Despite Defendant's position that it does not provide formal invoices until after all work is performed, Defendant generated an invoice for CFIC dated May 3, 2020. [Clayton Decl., Exh. E.]

A screen capture of Defendant's customer order display with an order for the subject valve dated June 13, 2019 lists the ordering entity as "China Aviation Supplies Company"; however, the email address on the order display is xuc@chinacfi.net. [Clayton Decl., Exh. G.]

On June 26, 2018, Xu Chang of CFIC emailed Feng Bo, a representative of Chengdu, informing him that CFIC received a quote directly from Defendant and

purchased the subject valve from Defendant. Xu Chang then stated that the price originally quoted by Nnydens would not work and apologized. Xu Chang's email account is xuc@chinacfi.net and his email signature bears the CFIC logo. [Fung Decl., ¶13, Exh. C.] Feng Bo forwarded the email to Ms. Fung and told her to cancel the jobs. [Id.] After several months of contacting Defendant and attempting to procure several aviation parts for customers, including the subject valve for CFIC, Nnydens lost the sale to CFIC. [Fung Decl., ¶14.] Thereafter, Chengdu pulled its pending order for American manufactured parts and ceased referring clients to Nnydens. [Id.]

### III.   LEGAL STANDARD

Summary judgmendt is appropriate only where the record, read in the light most favorable to the nonmoving party, indicates that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. [Fed. R. Civ. P. 56(c)(2).] Summary adjudication, or partial summary judgment upon all or any part of a claim, is appropriate where there is no genuine issue of material fact as to that portion of the claim. [Fed. R. Civ. P. 56(a), (b).] The proper inquiry upon considering such a motion is whether genuine factual issues exist which may reasonably be resolved in favor of either party and thus can only be decided by a finder of fact at trial. [*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 250.] That is, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." [*Id.* at 251.] In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." [*Id.* at 255.]

Because summary judgment is a "drastic device," cutting off a party's right to present its case to a jury, the moving party bears a "heavy burden" of demonstrating the absence of any triable issue of material fact. [*Ambat v. City & County of San Francisco,* (9th Cir. 2014) 757 F.3d 1017,1031.] Where reasonable

minds could arrive at different conclusions on the material facts at issue, summary judgment cannot be granted. [*See v. Durang,* (9th Cir. 1983) 711 F.2d 141,143.] Generally, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." [*Anderson,* supra at 255.] If there is doubt, the court should deny the motion for summary judgment or partial summary judgment.

## IV.   ARGUMENT

## A.   DEFENDANT INTENTIONALLY INTERFERED WITH NNYDENS' CONTRACT WITH CFIC.

The elements for intentional interference of a contract are: (1) Plaintiff had a valid and existing contract with a third party; (2) defendant had knowledge of the contract and intended to induce its breach; (3) the contract was in fact breached by the contracting third party; (4) the breach was caused by defendant's unjustified or wrongful conduct; and (5) plaintiff suffered damages as a result. [*Freed v. Manchester Serv., Inc.* (1958) 165 Cal.App.2d 186.] Here: (1) Nnydens had a valid and existing contract with CFIC to procure the subject valve [Fung Decl., ¶5.]; (2) Defendant was made aware of Nnydens' customer's identity as early as April 24, 2018 and confirmed this information directly with Nnydens' customer on May 2, 2018 [Fung Decl., ¶10, Exh. A.]; (3) Nnydens was unable to procure the part and sell to CFIC because Defendant made the sale directly, causing CFIC to breach the contract [Fung Decl., ¶13-14, Exh. C]; (4) Defendant knowingly and wrongfully caused the breach, as demonstrated in Helterbrand's June 4, 2018 email wherein he recognizes the substantial economic benefit that Nnydens will reap if it makes the sale to CFIC [Clayton Decl., Exh. F]; and (5) Nnydens lost the substantial profit it would have made from the sale, as well as the possibility for future business. [Fung Decl., ¶14.]

While Nnydens did not have a contract with "China Aviation Supplies

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

Company," it indisputably did with CFIC. [Fung Decl., ¶5.] CFIC and the China Aviation Supplies Company ("CASC") are connected, in that CASC is the department that deals with aviation parts. [Weber Decl., Exh. D: Deposition of Kevin McAllister 35:20-26:09.] Defendant cannot escape liability on such a technicality. To be sure, Defendant emailed **CFIC** on May 2, 2018. [Clayton Decl., Exh. D.] CFIC told Defendant that Xu Chang of CFIC had previously contacted Defendant to no avail. CFIC further confirms that Nnydens was actively working to acquire the subject valve. [Clayton Decl., Exh. D.] Xu Chang wrote to Feng Bo of Chengdu via email from the email account xuc@chinacfi.net on June 26, 2018, stating that CFIC had received a better quote from Defendant. Xu Chang's email signature conspicuously bears the CFIC logo. [Fung Decl., Exh. C.] In a screen capture of Defendant's customer order display listing the customer as "CASC," the contact is listed as xuc@chinacfi.net. [Clayton Decl., Exh. G.] Moreover, the fact that the customer entity is listed as "China Aviation Supplies Company" in Defendant's system does not change the fact that Defendant intentionally acted to interfere with the contractual relationship between Nnydens and CFIC. And, but for Nnydens identifying her customer as CFIC, Defendant would not have contacted CFIC directly and engaged in the sale of the subject valve to CFIC.

### 1.    Nnydens had a valid and existing contract with CFIC.

Nnydens had a valid contract with CFIC. As common for broker contracts, the contract was oral. [Fung Decl., ¶5-6.] CFIC, through its representative Xu Chang, desperately sought the subject aviation part at issue here: the 103678-4 outflow valve "subject valve." Xu Chang had attempted to purchase the subject valve from Defendant for several months, but was unsuccessful. [Clayton Decl., Exh. D.] Nnydens entered into an agreement with CFIC to procure the subject valve for CFIC and sell it to CFIC. [Fung Decl., ¶5.] It was told that no other entity was working on procuring the subject valve for CFIC. [Id.]

And where the existence of a contract is at issue, and the evidence is

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

1   conflicting or admits of more than one inference, the jury or other trier of fact must

2   determine whether the contract did in fact exist, precluding summary judgment.

3   [*Alexander v. Codemasters Group Ltd.* (2002) 104 CA4th 129, 141]. Similarly,

4   whether an implied contract exists is a question of fact for the fact-finder,

5   precluding summary judgment. [*Antelope Valley Groundwater Cases* (2018) 30

6   CA5th 602, 618 n11; *Unilab Corp. v. Angeles-IPA* (2016) 244 CA4th 622, 636.]

7          Furthermore, Defendant's argument that the contract was impossible to be

8   performed because it was predicated on Nnydens' successful purchase of the

9   subject valve from Defendant is unfounded. Contracts subject to conditions

10   precedent can be the basis for tortious interference claims. [*SCEcorp v. Superior

11   Court*, (1992) 3 Cal. App. 4th 673, 681.]  Moreover, Defendant does not deny that

12   it would have sold the subject valve to Nnydens, nor does it argue that Nnydens

13   was unauthorized to make the purchase from Defendant, nor the sale to CFIC.

14   Indeed, Defendant created any "impossibility" for the parties to perform by its

15   intentional inference with Nnydens contract. To be clear, the only reason Nnydens

16   was unable to sell the subject valve to CFIC is because Defendant sold the subject

17   valve to CFIC directly.

18          **a.      The Statute of Frauds defense is not available to Defendant in an**

19          **action alleging intentional interference with a contract.**

20          While Com. Code § 2201 provides that a contract for the sale of goods for

21   the price of $500 or more must be in writing, sufficient to satisfy the statute of

22   frauds, this argument is not available to Defendant in the present action. With

23   regard to the first element in a cause of action for intentional interference with a

24   contract, the tort does not require proof of a legally binding contract. [*Reeves v.

25   Hanlon*, (2004) 33 Cal. 4th 1140, 1152.] The element may be satisfied by a contract

26   that has been entered into but is unenforceable because of the statute of frauds or

27   similar legal flaws. [*Buckaloo v. Johnson*, (1975)14 Cal. 3d 815, 823.] To be clear,

28   an existing contract that is *voidable*, not void, because of the statute of frauds, lack

1  of consideration, uncertainty of terms, or other formal defect, nonetheless satisfies

2  the validity requirement for intentional interference with a contract. [*Shamblin v.*

3  *Berge* (1985) 166 Cal. App. 3d 118, 124; see *Zimmerman v. Bank of Am.* (1961)

4  191 Cal. App. 2d 55, 58. **Such a contract is said to be valid as to the defendant,**

5  **because its 'voidability' constitutes an affirmative defense that may only be**

6  **asserted by a party to the contract.** [ *Golden v. Anderson* (1967) 256 Cal. App.

7  2d 714, 719].

8        Moreover, the case law relied on by Defendant is inapplicable. *Pmc, Inc. v.*

9  *Saban Entm't*, cited by Defendant in its Motion, is based on the Copyright Act's 17

10  USC § 101 *et seq*. requirement of a signed writing. The *Pmc* court stated:

11          Unlike common law statutes of frauds (e.g., Civ. Code,
           § 1624), section 204 of the Copyright Act serves more than an
12          evidentiary function. Without a writing, a transfer of
           copyright is not valid and the transfer is not effective.
13          Further, the writing requirements under section 204 are
           more stringent than the common law statute of frauds…
14          Nonexclusive licenses can be granted orally because they are
           specifically excluded from the definition of a "transfer of
15          copyright ownership."

16  [*Pmc, Inc. v. Saban Entm't* (1996) 45 Cal.App.4th 579, 591-593 (citations

17  omitted).]

18        The *Pmc* court further states:

19          "Relying on Zimmerman, however, some cases seemed
            to hold that if the contract is merely "voidable" then an
20          action for interference with contract will lie. The distinction,
           which permits claims based upon a "voidable" but not a "void"
21          contract is premised upon the contract principle that a "contract"
           is an enforceable promise and that a promise may be valid, even
22          though its resulting contract may be voidable. In contrast, a "void"
           contract, e.g., one lacking legal subject matter or consideration, or
23          violating public policy or statutory law, is a "promise for breach of
           which the law neither gives a remedy nor otherwise recognizes a
           duty of performance by the promisor . . . ."
24

25  *Id.* at 597 (citations omitted).] And according to the case relied on by Defendant,

26  "the reasoning of *Zimmerman* has been adopted in a number of California cases."

27  *Id.* at 596. In order to get to its decision, the *Pmc* court relied on a non-California

28  case. Indeed, the court devoted a section of its opinion to case authority in non-

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
_____ Attorneys at Law _____

California jurisdictions, focusing on a New York case styled *Guard-Life Corp. v. S. Parker Hardware Mfg.* (1980) 428 N.Y.S.2d 628, which holds that if there is no enforceable contract, a plaintiff is limited to a cause of action for interference with prospective economic advantage. Not only was *Pmc, Inc. v. Saban Entm't* decided based on New York law and the Copyright Act's more stringent writing requirement, but the case was overruled by a subsequent case, *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134.

In *Zimmerman v. Bank of America National Trust & Savings Assn.* (1961) 191 Cal.App.2d 55, the plaintiff alleged that he made oral agreements with two sets of property owners to employ him as a real estate broker, that he negotiated an exchange of their properties and an agreement to pay him a stated commission, and that defendant's employee brought the property owners together and induced them to breach their contract with plaintiff. The court rejected the defendant's argument that plaintiff's oral contract was unenforceable and thus there was no interference with a contract. The *Zimmerman* court reasoned that the great weight of authority and critical opinion holds that the action for inducing breach of contract is merely a part of the broader protection against interference with advantageous economic relations. **Hence, if it is available even in the absence of any contract, it is not made unavailable by the fact that the contract is voidable by reason of the statute of frauds, lack of consideration, or even uncertainty.** [*Zimmerman v. Bank of America* (1961) 191 Cal.App.2d 55,58. ]

In *Friedman v. Jackson* (1968) 266 Cal.App.2d 517, the plaintiff was a broker who had an oral agreement with property owners to obtain and procure a purchaser for the property. The plaintiff showed the property to some 14 prospective buyers, including the defendants. The plaintiff alleged that the defendants told her they were not interested in the property, but thereafter approached the owners directly and told the owners that they learned about the property through a friend. The defendants induced the owners to sell the property

1  directly to them at a price that inferentially did not include the agreed commission.

2  The defendants argued that the agreement between the plaintiff and the owners was

3  an oral one and thus not enforceable. The California Court of Appeal reversed the

4  lower court's finding in favor of defendants, stating that the tort of interference

5  with a contract does not disintegrate because it relates to an oral contract.

6  [*Friedman v. Jackson* (1968) 266 Cal.App.2d 517, 520.]

7    The *Friedman* court reasoned that:

8      Although the brokerage agreement relied upon by plaintiff
    was oral, and thus subject to the defense of the statute of frauds

9      which could be asserted by the seller of the property to defeat
    any action by plaintiff on the contract, defendants, being strangers

10      to such contract, may not interpose that defense in this action
    which is founded in tort. [Contracts] which are voidable by reason

11      of the statute of frauds, formal defects, lack of consideration, lack
    of mutuality, or even uncertainty of terms, still afford a basis for

12      a tort action when the defendant interferes with their
    performance.'….'[One] who unjustifiably interferes with the contract

13      of another is guilty of a wrong. And since men usually honor their
    promises no matter what flaws a lawyer can find, the offender should

14      not be heard to say the contract he meddled with could not  have been
    enforced."*[Id. at 521]*

15

16    Similar to the plaintiff in *Friedman,* who made efforts to procure and obtain

17  buyers for the property, Nndyens made efforts to procure and obtain the subject

18  valve, and indeed was able to cause the sale of the subject valve to CFIC. [Fung

19  Decl., ¶8; Clayton Decl., Exh. E, G.] And just as the defendant in *Friedman*

20  contacted the other party to plaintiff's contract directly, Defendant contacted CFIC

21  directly. [Clayton Decl., Exh. D.] And just like the plaintiff in *Friedman* who was

22  cut out of the deal and lost the profits on the sale, Nnydens was cut out of the deal

23  and lost profits. [Fung Decl., ¶14.]

24    Pursuant to California case law on this issue, the fact that Nnydens' contract

25  with CFIC was not in writing does not preclude a finding that Defendant

26  intentionally interfered with the contract and therefore, Defendant's Motion for

27  Summary Judgment should be denied.

28

4840-3418-5915.1              **11**           Case No. 2:18-CV-09455

**PLAINTIFF NNYDENS INTERNATIONAL'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

**2.      Although Defendant had knowledge of Nnydens' contract with CFIC, it intentionally interfered with the contract by selling the subject valve to CFIC directly.**

While a plaintiff must prove that the defendant knew of the contract with which it interfered, "the plaintiff need not establish that the defendant had full knowledge of the contract's terms." [*Little v. Amber Hotel Co.* (2011) 202 Cal.App.4th 280, 302; See also *I-CA Enterprises, Inc. v. Palram Americas*, Inc.,235 Cal. App. 4th 257, 290 (2015) (affirming jury finding of interference with contractual relations where "the jury was justified in finding that Palram's executives at least knew of the contractual relationship between I-CA and Plasgad" because "[t]here was evidence that Palram knew that I-CA was the exclusive distributor of the plastic closure strips in North America.")] Thus, Defendant's reliance on its lack of knowledge of the precise terms and contours of the contract cannot insulate it from liability.

Nnydens advised Defendant several times that it was acquiring the subject valve on behalf of another entity. Nnydens was not making substantial efforts to acquire the subject valve on behalf of another entity for any charitable or gratuitous purpose. Defendant was well aware that CFIC was Nnydens' customer as early as April 24, 2018, and Defendant was provided confirmation from CFIC of that fact on May 2, 2018. [Fung Decl., ¶10, Exh. A; Clayton Decl., Exh. D.] Yet, despite receiving this verification of Nnydens' role in the transaction, Defendant proceeded to engage in the sale to CFIC instead of simply advising that it would process the order for Nnydens after confirming Nnydens' role. [Clayton Decl., Exh. D.]

A plaintiff need not prove that a defendant acted with the primary purpose of disrupting the contract, but must show that the defendant knew that "the interference was certain or substantially certain to occur" as a result of the defendant's action. [*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148; *Savage v. Pacific Gas & Elec. Co.* (1993) 21 Cal. App. 4th 434, 449, 450 (intent to interfere

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
_____ Attorneys at Law _____

may be inferred from a defendant's intentional performance of an act substantially certain to result in interference).] Undoubtedly, Defendant knew that its direct correspondence with Nnydens' confirmed and identified customer about costs, lead time and purchase options would effectively eliminate Nnydens from the transaction. [Clayton Decl., Exh. I, J.] And Defendant was well aware that Nnydens had spent months persistently trying to procure the subject valve, among others. Furthermore, in a June 4, 2018 email from George Helterbrand to Defendant's other employees, Helterbrand listed pricing for three potential customers for the valve. He specifically stated that "Due to the 103678-4 outflow valve being a made to order part that cannot be returned it would be very risky to a PIA account **and the final price to the end customer would be greater than our full list if Nnydens Intl Inc. has any mark up on the sale of the part.**" [Clayton Decl., Exh. F.] Thus, **Defendant not only knew of the contract, but intentionally sold the part to Nnydens' customer to prevent Nnydens from receiving the economic benefit.** And a jury may infer culpable intent from conduct substantially certain to interfere with the contract or prospective economic relationship. [*Savage v. Pacific Gas & Elec. Co.* (1993) 21 Cal.App.4th 434, 449.] As such, Defendant's Motion for Summary Judgment should be denied.

**B.   THE COURTS OF APPEAL ARE SPLIT ON WHETHER A CAUSE OF ACTION EXISTS FOR NEGLIGENT INTERFERENCE WITH A CONTRACT.**

The Courts of Appeal are split on whether a cause of action exists for negligent interference with existing contractual relationships. [*See, e.g., Chameleon Eng'g Corp. v. Air Dynamics Inc*.,(1980) 101 Cal. App. 3d 418, 423; California Business Litigation 5-2.] So long as interference is foreseeable, a claim for negligent interference should lie whether the relationship interfered with is a binding contract or a prospective relationship. [*Id.*]

In *Fifield Manor v. Finston*, 54 Cal. 2d 632 (1960), the California Supreme

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
—— Attorneys at Law ——

Court stated that "the courts have quite consistently refused to recognize a cause of action based on negligent, as opposed to intentional, conduct which interferes with the performance of a contract between third parties." [*Id.* at 636.] The California Supreme Court reasoned that to recognize such a claim "would constitute an unwarranted extension of liability for negligence." [*Id.* at 637.] But the California Supreme Court has since recognized a cause of action for negligent interference with prospective economic advantage, **which indeed extends liability for negligence**. [*J'Aire Corp. v. Gregory*, (1979) 24 Cal. 3d 799.] A cause of action for negligent interference with prospective economic advantage extends liability for negligence *even more so* than a cause of action for negligent interference with a contract because no contractual relationship is required. Subsequent reported cases recognizing claims for negligent interference with a contract have done so without citing *Fifield* or discussing the substantive elements of the claim. [*Compare Woods v. Fox Broad. Sub., Inc.*, (2005) 129 Cal. App. 4th 344, 350 (referencing existence of claim for negligent interference with an existing contract); *with SCEcorp v. Superior Court*, (1992) 3 Cal. App. 4th 673, 677 (considering the cause of action for negligent interference with contractual relations *to be included within* the broad cause of action of negligent interference with prospective economic advantage).]

Should this Court treat Nnydens' cause of action for negligent interference with a contract as a claim for negligent interference with prospective advantage, Nnydens would still prevail on its claim. To establish that a defendant wrongfully interfered with a plaintiff's prospective economic relations, a plaintiff must show that: 1) plaintiff was in an economic relationship that would have probably resulted in a future economic benefit to plaintiff; 2) defendant knew or should have known of the relationship; 3) defendant knew or should have known that the economic relationship between plaintiff and the third party would be disrupted if it failed to act with reasonable care; 4) defendant failed to act with reasonable care; 5) that defendant engaged in wrongful conduct; 6) the economic relationship was

14

**PLAINTIFF NNYDENS INTERNATIONAL'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1  disrupted; 7) plaintiff was harmed; and 8) defendant's wrongful conduct was a

2  substantial factor in causing plaintiff's harm. [1 CACI 2204 (2019).]

3      Here: (1)Nnydens was in an economic relationship with CFIC that would

4  have resulted in a substantial economic benefit to Nnydens [Fung Decl., ¶5.]; (2)

5  Defendant knew that Nnydens had made substantial efforts to procure the subject

6  valve to sell it to CFIC for profit, and this relationship was confirmed by CFIC

7  [Fung Decl., ¶8; Clayton Decl., Exh. D.]; (3) Defendant knew that if it contacted

8  CFIC directly and advised it of costs and details, the economic relationship

9  between CFIC and Nnydens would be disrupted [Clayton Decl., Exh. F.]; (4)

10 Defendant contacted CFIC,  confirmed the economic relationship with Nnydens

11 and then quoted CFIC a lower price for the subject valve [Clayton Decl., Exh. D;

12 Fung Decl., ¶13, Exh. C.]  (5)  Defendant engaged in wrongful conduct by

13 fraudulently promising Nnydens that Defendant would use the end-user

14 information solely to comply with federal regulations, and fraudulently leading

15 Nnydens to believe that Defendant would not contact Nnydens' end-user [Fung

16 Decl., ¶ 9.]; (6) the relationship between Nnydens and CFIC was indeed disrupted

17 [Fung Decl., ¶13-14.]; (7) Nnydens was harmed because it lost the opportunity to

18 sell the subject valve to CFIC and its relationship with Chengdu was damaged

19 [Fung Decl., ¶14.]; (8) Defendant's conduct was unquestionably a substantial factor

20 in causing Nnydens' harm. [Id.]

21      In cases of interference with prospective economic advantage, the

22 "competition" privilege is no longer an affirmative defense. [*Bed, Bath & Beyond

23 of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*, (1997) 52 Cal. App. 4th

24 867, 881.] Thus, Defendant's Motion for Summary Judgment should be denied.

25

26

27

28

### C.   NOT ONLY HAS DEFENDANT VIOLATED CALIFORNIA'S UNFAIR COMPETITION LAW BY INTENTIONALLY INTERFERING WITH NNYDENS' CONTRACT WITH CFIC, IT ADMITS THAT IT ENGAGES IN UNFAIR BUSINESS PRACTICES.

California's Unfair Competition Law ("UCL") was enacted "to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." [*Kasky v. Nike, Inc*. (2002) 27 Cal.4th 939, 949.] To state a claim under the Unfair Competition Law ("UCL"), a plaintiff must prove that a defendant's conduct was unlawful, unfair, or fraudulent. [Cal. Bus. Prof. Code § 17200; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, (Cal. 1999) 20 Cal. 4th 163.]  Section 17200 is to be read disjunctively. [*Id.* ]This means that a cause of action need only meet one of the descriptors: unlawful or unfair or fraudulent. [*Id.*] Furthermore, the right to seek an injunction against illegal conduct under Business and Professions Code Section 17203 does not depend on the right to recover restitution, so long as the plaintiff has suffered sufficient injury to meet the requirements for standing to sue. [*Clayworth v. Pfizer, Inc.* (2010) 49 Cal. 4th 758, 790; see also *Kwikset Corp. v. Superior Court* (2011) 51 Cal. 4th 310, 337 (ineligibility for restitution does not defeat standing to bring action under Bus. & Prof. Code § 17204).] The Ninth Circuit has recognized that tortious behavior such as intentional interference with a contract qualifies as the type of activity proscribed by the UCL. [*CRST Van Expedited, Inc. v. Werner Enters*., (9th Cir. 2007) 479 F.3d 1099, 1107.] As set forth above, Nnydens has established that Defendant intentionally interfered with its contract with CFIC; therefore, Nnydens can establish its claim that Defendant violated California's Unfair Competition Law.

But not only has Defendant violated the UCL by intentionally interfering with Nnydens' contract with CFIC, Defendant admits that it has established a pattern and practice of this behavior with any and all customers. (Zimmer Decl. ¶5.) Defendant states that when a potential customer contacts Defendant and advises

**PLAINTIFF NNYDENS INTERNATIONAL'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

that the customer is ordering for a separate end-user, it *assumes* that the potential customer does not have an exclusive contract to supply the part to the end-user. (Id.) Defendant states that end-users will purchase the part directly and bypass the broker if the price of the parts will be lower by doing so. (Id.) However, this practice is problematic for several reasons. A broker or "middle-man" does not contract with an end-user to locate and procure parts on the end-user's behalf for free. If an end-user can successfully locate and purchase a part from Defendant directly without the assistance of another entity, it would do so. But that is not the case here, and is likely not the case in most circumstances. CFIC confirmed that Nnydens was indeed working on procuring the part for CFIC because CFIC was not successful on procuring the part on its own. [Clayton Decl., Exh. D.] Thus, Defendant admittedly goes behind a potential customer, broker, or middle-man's back after learning the end-user's identity, contacts the end-user and attempts to make the sale directly with the hope of establishing a long-term business relationship with that end-user. (Zimmer Decl. ¶5.) But Defendant is thereby intentionally acting to induce an end-user's breach of a contract with its broker or "middle-man," and causing that broker or "middle-man" to suffer substantial losses, not only in sales, but in time wasted by locating and procuring parts for the end-user.

The "Know Your Customer" guidance relied on by Defendant as justification for its contacting Nnydens' customer directly states: "[A]bsent red flags (…), there is no affirmative duty upon exporters to inquire, verify or otherwise *"go behind" the customer's representations*." It also states: "the purpose of this inquiry and re-evaluation is to determine whether the 'red flags' can be explained or justified. If they can, you may proceed with the transaction." [15 C.F.R. Ch. VII, Pt. 732, Supp. 3, Department of Commerce, Bureau of Industry and Security, "Know Your Customer, Guidance and Red Flags".] The "red flag" here, according to Defendant is that Nnydens was hesitant to offer information about its end-user. But Nnydens

1   was hesitant for the precise reason the parties are litigating this matter today.

2   Nnydens feared Defendant would contact its end-user directly and try to sell to it,

3   and Defendant did just that. To be certain, Defendant confirmed that CFIC needed

4   the subject valve, and confirmed that Nnydens was working on procuring the

5   subject valve for CFIC. [Clayton Decl., Exh. D.] Defendant knew that Nnydens

6   was not seeking the outflow valve for some charitable purpose, but for the purpose

7   of selling it to an end-user for Nnydens' profit. [Clayton Decl., Exh. F, I.]

8   Nonetheless, Defendant continued to contact CFIC and offered the part for a lower

9   price. [Fung Decl., Exh. C.; Clayton Decl., Exh. E, G, J.] Defendant does not allege

10  that CFIC was not an authorized end-user, nor does it argue that Nnydens was not

11  authorized to sell the part to CFIC. Despite being aware of Nnydens' role and its

12  significant efforts in obtaining the requested part, Defendant proceeded to engage

13  in the sale to CFIC instead of simply advising that it would process the order for

14  Nnydens after confirming Nnydens' role.

15        Defendant's unfair business practices do not stop there. It is unclear whether

16  Defendant planned to sell the part to both CFIC and Nnydens, or simply take

17  Nnydens' money with no guarantee of any part, no invoice or other proof of

18  purchase. [Fung Decl., Exh. B; *See also* Clayton Decl., Exh. I] Defendant last

19  requested wire payment from Nnydens on June 19, 2018, but by that time,

20  Defendant already had an order in its system for CFIC dated June 13, 2018; an

21  invoice for CFIC dated May 3, 2018; and had exchanged emails with CFIC

22  regarding the costs and details of the part. [Id.; Clayton Decl., Exh. E, G, J.] Thus,

23  Defendant not only knowingly interfered with Nnydens' contract and business

24  transaction, but appears to have attempted to amplify its wrongdoing—either

25  sticking Nnydens with a part that its customer no longer needed because the

26  customer purchased directly, or receiving Nnydens' funds with no possibility of

27  ever receiving the part since the part was already sold to its customer directly.

28        As such, this Court should deny Defendant's Motion for Summary

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
___ Attorneys at Law ___

1    Judgment.

2                    **V.    CONCLUSION**

3          For all of the foregoing reasons, Nnydens respectfully requests that this

4    Court deny Defendant's Motion for Summary Judgment/Partial Summary

5    Judgment.

6    DATED:  April 29, 2020              **MANNING & KASS**
7                                        **ELLROD, RAMIREZ, TRESTER LLP**

8

9

10                                  By:  _____/s/ *Chelsea M. Clayton*_____
11                                       James E. Gibbons, Esq.
                                         Chelsea M. Clayton, Esq.
12                                       Attorneys for Plaintiff NNYDENS
                                         INTERNATIONAL INCORPORATED
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    19
**PLAINTIFF NNYDENS INTERNATIONAL'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

1

## PROOF OF SERVICE

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

     At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My

4

business address is 801 S. Figueroa St, 15th Floor, Los Angeles, CA 90017-3012.

5

     On May 1, 2020, I served true copies of the following document(s) described

6

as **PLAINTIFF NNYDENS INTERNATIONAL'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action as follows:

7

8

Manual Saldana, Esq.
Christopher J. Weber, Esq.
GORDON REES SCULLY MANSUKHANI, LLP

*Attorneys for Defendant*
*TEXTRON AVIATION, INC*.

9

633 West Fifth Street, 52nd Floor

10

Los Angeles, CA  90071
Telephone:   (2134) 576-5054
Facsimile:    (213) 680-4470

11

12

     **ONLY BY ELECTRONIC TRANSMISSION:**  Only by emailing the

13

document(s) to the persons at the e-mail address(es).  This is necessitated during the declared National Emergency due to the Coronavirus (COVID-19) pandemic

14

because this office will be working remotely, not able to send physical mail as usual, and is therefore using only electronic mail.  No electronic message or other indication that the transmission was unsuccessful was received within a reasonable

15

time after the transmission. We will provide a physical copy, upon request only, when we return to the office at the conclusion of the National Emergency.

16

17

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

18

19

     Executed on May 1, 2020, at Los Angeles, California.

20

21

22

_____
Carmen Hawkins

23

24

25

26

27

28

1

**PLAINTIFF NNYDENS INTERNATIONAL'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*